Opinion by
Mr. Justice McWilliams.
This writ of error has its genesis in a proceeding before the Public Utilities Commission entitled “Re Motor Vehicle Operations of T. L. Tucker, Lamar, Colorado, under Certificate No. 1407 and Permit No. B-1148.” In that proceeding an order to show cause was issued by the Commission requiring Tucker to show cause why the Commission should not take such action and enter such order or penalty as may be appropriate, including but not limited to “an Order cancelling the aforesaid certificate and permit of... . [Tucker].”
In the order to show cause Tucker was accused by the staff of the Commission of violating the rules and regulations of the Commission in the following manner: “(1) By appointing and using persons throughout the State of Colorado to develop business for him in an unauthorized manner;
“(2) By permitting or allowing persons not authorized to engage in transportation business to do so through *133 the means of emergency letters and leases issued by him;
“(3) By permitting or allowing unauthorized persons to share the proceeds of the aforesaid transportation upon a percentage basis;
“(4) By engaging in operations and practices contrary to Rule 16 of the Commission’s Rules and Regulations Governing Common Carriers by Motor Vehicle;
“(5) By engaging in operations and practices contrary to Rule 14 of the Commission’s Rules and Regulations Governing Private Carriers by Motor Vehicle; and
“(6) By disrupting through said operations as aforesaid the transportation balance previously established in certain areas throughout the State.”
A hearing of this matter was held before the entire Commission, at which time and place Tucker personally appeared and also was represented by counsel. Incidentally, as will become evident, present counsel for Tucker did not represent him before the Commission. Before any testimony was taken, several motor transport carriers orally moved to intervene and over objection they were permitted to do so. The Commission’s staff then presented its case, which consisted of the testimony of two of its members, namely Messrs. Coates and Carter, as well as extended cross-examination of Tucker, together with various exhibits. At the conclusion of this particular hearing counsel for Tucker sought and obtained a thirty day continuance. Counsel indicated that he desired time to study the transcript of the evidence offered against Tucker before determining what evidence, if any, he would offer in behalf of Tucker. When the hearing reconvened counsel stated that no evidence would be introduced in behalf of Tucker, but that a statement of position would be, and thereafter was, submitted.
After a review of the record the Commission in Decision No. 63185 found Tucker to be in violation of certain rules and regulations of the Commission and entered an order revoking Certificate No. 1407 and Permit No. B-1148, or, in the alternative, restricting the *134 authorities in certain particulars. Under the order, then, Tucker had the choice of accepting the restriction against his authorities or accepting the cancellation thereof.
Petition for rehearing was thereafter filed by Tucker and denied by the Commission, though the Commission in a two to one vote “explained” and to some extent modified the restrictions laid down in its earlier order.
Tucker then sought judicial review of this administrative order in the district court for Prowers County. After hearing the trial court entered a preliminary injunctive order staying the Commission’s decision until further order of court. A hearing on the merits of the matter was thereafter held and culminated in a finding by the trial court that the Commission had abused its discretion and ordered the decision set aside. By writ of error the Commission, and certain of the intervenors, now seek reversal of the judgment thus entered by the trial court.
Without going into what, under the circumstances, would be unnecessary detail, Tucker was clearly violating the rules and regulations of the Commission by allowing and permitting persons not authorized to engage in the transportation business to do so through the means of so-called Emergency Letters and “leases” creating what are styled as “lessor-agents.” As concerns the “leases” and “lessor-agents,” the Commission held, in effect, that the leases were but a sham, and that the owners of vehicles, who ostensibly leased them to Tucker at the rate of 20 cents per running mile, were actually acting as agents for Tucker and that they actively solicited business and then rendered service under Tucker’s authorities. Furthermore, the Commission found that instead of receiving payment from Tucker at the rate of 20 cents per running mile, these “lessor-agents” actually paid Tucker a percentage of the monies which they received for the transportation services thus rendered. And these violations were not isolated instances, but were committed on a wholesale basis.
*135 As we understand Tucker’s position in this court, he concedes that his method of operation as outlined above was in violation of the rules and regulations of the Commission. Tucker contends, however, that the trial court was nevertheless correct in setting aside the decision of the Commission because of certain procedural defects occurring in the proceedings before the Commission. These procedural defects, according to Tucker, are of such serious nature as to justify the holding by the trial court that the Commission “grossly” abused its discretion. Let us examine some of these alleged procedural defects which are said to have so infected the hearing before the Commission as to have affected the outcome thereof.
As noted above, the Commission over objection granted an oral motion to intervene interposed by certain motor transport carriers at the start of the hearing. Tucker points out that Rule 8 of the rules and regulations of the Commission provides that persons not directly affected by the proceedings must secure an order from the Commission granting leave to intervene before being allowed to participate and that such petition to intervene “must be in writing.” In this connection Rule 29 of the Commission’s rules and regulations provides that “in special cases for good cause shown” the Commission may permit “deviation from these rules insofar as it may find compliance therewith to be impossible, impracticable or unnecessary.” In the instant case, the Commission simply granted the oral motion to intervene, and we find nothing in the record to indicate that the intervening parties even attempted to show “good cause” for deviation from the aforementioned Rule 8. Under such circumstances we conclude that in granting the oral motion to intervene the Commission did in fact violate its own rules and regulations. Rules are generally promulgated on the premise that they will be enforced. We respectfully suggest that the Commission either enforce Rule 8 or repeal it.
*136 But is this the type of error that compels the conclusion that the Commission so abused its discretion that its decision must be set aside? In our view it is not. It should be noted that none of the intervenors offered any testimony at the hearing before the Commission. Tucker suggests, though, that the mere fact that numerous parties were permitted to intervene may have produced a “psychological effect” which somehow influenced the Commission in arriving at its ultimate decision. Needless to say we are not at liberty, let alone inclined, to indulge in any such psychoanalysis of the Commission and its decision. It is to be presumed that the Commission, even as does a court, bases all of its decisions on the facts and law of the case at hand, and not on the identity or number of disputants. This error has no bearing on the central issue in the case, namely: was Tucker in his method of operation violating the rules and regulations of the Commission? This then is only error “up in the air” and in nowise prejudicial in nature.
 Tucker next argues that the Commission erred in denying his petition for rehearing. In this connection Tucker’s argument could be vernacularized as being of the “I didn’t know the gun was loaded” variety. According to Tucker, though he knew full well that he was the subject of the hearing before the Commission, he simply had no idea that he would be dealt with so severely. The only evidentiary matter before us which bears on this point are two affidavits which Tucker attached to the petition for rehearing filed by him with the Commission.
The first of these two affidavits is that of counsel who represented Tucker before the Commission. In this affidavit counsel deposed as follows:
“I discussed this case with Mr. Louis J. Carter, Supervisor of Complaints and Investigation for the Public Utilities Commission; and that as a result of that discussion and in reliance upon Mr. Carter’s statements I proceeded on the basis that this proceeding was in *137 reality a test case brought by the Staff of the Commission to obtain a decision for its guidance with respect to the employment, not only by Mr. Tucker, but by other carriers of lessor agents; and that the assessment of a penalty against Mr. Tucker or the imposition of a restriction or limitation on his certificate or permit were not sought or intended.
“Such statements were to the effect that this is a test to determine whether Tucker may lawfully employ lessor agents, that there had been numerous complaints about the employment of such agents, that he knows of no decision on the subject, that he cannot give the answer without a decision by the Commission, that neither he or the Commission are mad at Tucker, that the Staff was not out to penalize or harm Tucker, that the Staff did not know whether it was against the law or not, and that, if it was, there are others that the Staff wants to get into line.”
The second of these affidavits is that of Tucker himself. This affidavit reads as follows:
“That Cyril Coates, P.U.C. investigator, has visited my office in Lamar, Colorado, on numerous occasions and that he was familiar with my methods of doing business which are in issue herein, and that further I discussed these matters with him and he has never suggested that I desist or discontinue my methods of doing business.”
In connection with this particular contention it should be kept in mind that C.R.S. 1963, 115-9-12 provides that the Commission for good cause “may suspend, revoke, alter or amend” any certificate of public convenience and necessity, “by order duly entered, after hearing had upon notice----” Furthermore, as above noted, the order to show cause served upon Tucker specifically requested him to show cause why the Commission should not enter such penalty as may be appropriate, including but not limited to an order “cancelling” the aforesaid certificate and permit theretofore issued Tucker. Certainly then if Tucker read the aforesaid order to show *138 cause he was apprised of the fact that his certificate and permit were conceivably in jeopardy. And Tucker wisely responded to the peril by retaining competent counsel experienced in Commission practice to represent him before that body. Under these circumstances to now permit Tucker to overturn the Commission’s decision on the ground that because of certain conversations he and his counsel had with members of the Commission’s staff he had no idea his certificate and permit were in danger of being cancelled would lay down a rule which could undermine every decision of the Commission. We conclude then that the Commission did not err in denying Tucker’s petition for rehearing.
A somewhat analogous situation is to be found in McKay v. Utilities Commission, 104 Colo. 402, 91 P.2d 965. There a private carrier was among other things charged with unlawful advertising. The private carrier countered by claiming that his advertising practice had been approved by an inspector working for the Commission. In rejecting this as a defense this Court declared as follows:
“.... We cannot too strongly stress that this is no defense to a charge for the violation of any law or order of the commission or the terms of a permit. We are not concerned with the wisdom or lack of wisdom of those connected with the administration of regulatory power to give curbstone opinions as to what may and may not be done. The law provides how the commission shall determine an issue, and mere conversations are impotent to change it....”
Minor complaint is also registered by Tucker because the Commission over objection permitted the witness Carter to give opinion testimony. C.R.S. 1963, 115-6-1 certainly indicates that the Commission is not “bound by technical rules of evidence.” In any event Carter’s testimony in this particular did not in any manner relate to what we regard as the basic issue in the case and hence could not have effected the outcome.
*139 Finally, complaint is made about the form of the decision rendered by the Commission. In its decision the Commission declared that Tucker’s certificate and permit “should be, and the same hereby are, revoked and cancelled, provided, however, that in lieu of said revocation and cancellation, Respondent may, if he should so desire, elect to accept the following restriction ....” The restriction need not be recited here. The decision then went on to order Tucker to make his election within 21 days. All of counsel apparently are of the view that inasmuch as Tucker made no “election” within 21 days from the date of the aforesaid decision, the decision of the Commission with which we are now concerned is outright cancellation and revocation of the certificate and permit, and nothing less. Tucker accordingly complains about the “form” of the decision, which he says placed him in the unenviable position of either accepting the restriction and forgoing judicial review, or declining to elect and gambling all on his ability to get the court to overthrow the cancellation order of the Commission. We do not agree with this interpretation of the Commission’s decision.
The Commission found that Tucker had violated certain rules and regulations of the Commission, and as indicated there is more than ample evidence to support this finding. The penalty ordered by the Commission was that Tucker’s certificate and permit be cancelled unless he elected to accept certain restrictions, restrictions which as we have heretofore indicated were to some extent modified by the Commission when it denied Tucker’s petition for rehearing. Tucker, of course, had the right to have the propriety of the Commission’s decision, which includes findings and conclusions, as well as an order, reviewed by the courts. Certainly the concept of fair play suggests that Tucker be not required to make an election until he has obtained such judicial review. To hold to the contrary would raise serious doubts concerning the propriety of the forms of penalty *140 thus imposed upon him. Hence, though we hereby approve the decision of the Commission, we hold that Tucker has 21 days after the trial court hereafter acts in accordance with our remand of the matter within which to make his election.
The judgment of the trial court is therefore reversed, and the cause remanded with direction that the trial court enter judgment approving and affirming the decision of the Commission.
Mr. Chief Justice Moore, Mr. Justice Day and Mr. Justice Groves concur.